[No. 48781–2.   En Banc.   May 10, 1984.]

THE STATE OF WASHINGTON, *Respondent,* v. ISAAC LEE PAM, *Petitioner.*

*Rosemary P. Bordlemay* and *Michael Filipovic* of *Seattle–King County Public Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney, Joanne Y. Maida, Senior Deputy,* and *Jennifer Eychaner, Deputy,* for respondent.

ROSELLINI, J.—Petitioner Isaac Lee Pam challenges a Court of Appeals decision which allows the State to retry him on habitual criminal charges. We reverse. *State v. Pam,* 31 Wn. App. 692, 644 P.2d 722 (1982).

On May 16, 1980, petitioner was convicted of first degree robbery and second degree assault. These convictions were affirmed in *State v. Pam,* 98 Wn.2d 748, 659 P.2d 454 (1983). The special weapon findings were vacated, however, and Pam's case was remanded for resentencing.

Following his conviction, the State filed a supplemental information charging Pam as a habitual criminal. The information contained three counts alleging prior convictions. Count 1 involved defendant's 1969 guilty plea to forgery in the first degree. Count 2 alleges that defendant pleaded guilty, in 1974, to violating the Uniform Controlled Substances Act. In count 3, the State presented evidence that defendant had been convicted of robbery in 1968.

Pam challenged the present use of the guilty pleas and, prior to trial, he moved to dismiss counts 1 and 2. Pam asserted that these guilty pleas were constitutionally infirm. He cited two defects in the pleas. As to count 1, Pam contended that he had not been advised of the maximum term for the offense. As to count 2, Pam contended that he had neither been advised nor did he understand his constitutional right to remain silent.

To prove the constitutionality of the pleas, the State subpoenaed Pam's prior defense attorneys. Pam moved to quash the subpoena, asserting that communications with former attorneys are protected by the attorney–client privilege. The trial court denied the motion to quash, ruling that the privilege did not apply.

At this point, the proceedings were continued to the next day, when the prosecutor announced that the attorneys were present and that the public defender's office had refused to honor the subpoena for the pertinent files. Pam's attorney in the first case took the stand; Pam objected, asserted the attorney–client privilege, and the prosecuting attorney responded:

MRS. MAIDA: I don't wish to put Mr. Sayre in any difficult position. I realize we are just trying to make a record to preserve the record for the appellate court, but I think the Court understands my position the fact that a person being previously convicted of a crime is not a privileged matter because it took place in court. It is a matter of public record and it was just an informational question which would have led up to my asking the ultimate question in this case *but with that objection being stated I'll move on to another question.*

THE COURT: Very well.

MRS. MAIDA: *I would assume the Court would sustain it in order to preserve this record.*

THE COURT: *All right, I'll sustain it.*

Q (By Mrs. Maida) Mr. Sayre, as I indicated, I don't wish to put you in any difficult position, and we are just making a record at this point. In regards to Cause No. 51386 and your representation of the defendant, Mr. Pam, did you advise him the maximum term which he would serve for which a person charged with first degree forgery might legally receive?

MR. SEDNEY: Objection on all the same grounds, your Honor.

THE COURT: All right. We will rule in the same manner for the reasons previously noted in order to merely protect and make the record. Sustain the objection.

(Italics ours.) Report of Proceedings, at 31–32.

The attorney then volunteered that he intended to assert

the privilege. The next defense counsel did likewise with similar statements being made by counsel and the trial judge.

The court then inquired about the status of the case and the prosecutor responded:

> MRS. MAIDA: Your Honor, I indicated prior to the recess that we took this morning that I would be willing to proceed with the matter independent of any privilege that is raised by the defense. I still feel that I have enough information here beyond a reasonable doubt that would convince this Court of the validity of these convictions and therefore I am proceeding now with the habitual criminal proof aspect of this trial. I would like to have the Court entertain receipt into evidence of certain documents.
>
> THE COURT: Okay.
>
> MRS. MAIDA: I do have a detective available to testify to the admission of certain documents, and so for the purpose of calling him now, I would like to—he would be called out of the normal order of evidence the way I would normally present it. I would like to get him on the stand so that we could excuse him.

Report of Proceedings, at 40.

Following the State's presentation, the trial court found that the State was unable to prove that Pam had been advised of the consequences of his guilty pleas. Consequently, the judge granted defense motions to dismiss counts 1 and 2. Defendant then insisted that the matter proceed to trial, apparently on count 3. The court declined to allow trial and instead dismissed the supplemental information with prejudice. The State objected, arguing that the dismissal would prohibit it from relitigating the habitual criminal proceeding. After extensive argument, the trial judge ruled simply that the information was dismissed. The State appealed the dismissal of counts 1 and 2 of the information under RAP 2.2(b)(1), (2). It did not, however, assign error to the dismissal of the information.

Following transfer from this court, Division One of the Court of Appeals reversed both of the trial judge's orders and remanded the case for trial. We reverse.

■ *State v. Fortun,* 94 Wn.2d 754, 626 P.2d 504 (1980) disposes of the State's appeal. In *Fortun,* we refused to consider the merits of the State's appeal from a suppression order because the State had failed to "assign error to or argue the more basic and underlying order which dismissed the charge against respondent." *Fortun,* at 756.

Precisely the same events occurred here. The State first set up a test case for determining whether the attorney–client privilege applied to habitual criminal proceedings and then attempted to expedite review of the issue by appealing the dismissal of two of the three counts charged. It did not, however, appeal the underlying dismissal of the information. Thus, any claimed error was waived, both under the rule enunciated in *Fortun,* and that required by the Rules of Appellate Procedure. RAP 10.3(a)(3).

■ Moreover, we note that the same result is required by the doctrine of invited error. *See generally State v. Boyer,* 91 Wn.2d 342, 588 P.2d 1151 (1979). That doctrine prohibits a party from setting up an error at trial and then complaining of it on appeal. *State v. Boyer, supra.* The present case does exactly that. Apparently on the theory that the issue relating to attorney–client privilege needed to be resolved by a higher court, the prosecutor asked the court to sustain defendant's objections, despite a favorable ruling by the trial judge on the privilege issue.

The adversary system cannot countenance such maneuvers. Effective appellate review can be achieved only if both the defendant and the State maintain their adversary positions and vigorously litigate their respective claims. When counsel attempts to circumvent this system, the issues are not adequately presented for review and the system falters.

For this reason and the one above, we reverse.

WILLIAMS, C.J., and STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, DIMMICK, and PEARSON, JJ., concur.